## WILL SHULZE v. THE STATE.

*No. 3069.    Decided December 18.*

**1. Practice—Accomplice and Accomplice Testimony—Charge of the Court. Evidence** which tends to establish the complicity of a prosecuting witness as an accomplice to the offense on trial, requires that the question of such complicity shall be submitted to the jury in connection with proper instructions as to the necessary corroboration of accomplice testimony. See the opinion *in extenso* for evidence *held* to present the complicity of the witness Lunsford, as an accomplice, as an issue in the case, and to have demanded of the trial court a proper charge upon accomplice testimony.

**2. Same—Surprise—Continuance.**—Upon the introduction by the State of inculpatory evidence which operated a surprise, the defendant moved to withdraw his announcement, and for a continuance to obtain testimony whereby he could meet the said inculpatory evidence. *Held*, that the absent testimony being such as was calculated, under the circumstances of the case, to confute the said inculpatory evidence, and the motion showing service upon the absent witness, and that he was confined to his bed by illness, the motion should have been granted. See the opinion.

APPEAL from the District Court of Titus. Tried below before Hon. Felix J. McCord.

The death penalty was assessed against the appellant upon his conviction in the first degree for the murder, in Titus County, Texas, on the 10th day of December, 1888, of James R. King, and M. A. M. King, and Armina King, and J. B. King, and T. W. King, and C. W. King, and J. E. King, and Ida E. King.

The evidence bearing upon the rulings of the court is fully stated in the opinion of the court.

*S. P. Pounders*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

HURT, JUDGE.—This is a conviction for murder of the first degree with the death penalty assessed.

The *corpus delicti* was we think amply established. The bodies or portions thereof were found, and sufficiently identified to establish the fact of the death of the persons charged to have been killed (Willson's Crim. Stats., 549), and it is by the circumstances made clear and certain that their deaths were caused by the violence of some person or persons.

The conviction depends mainly upon the testimony of Albert Lunsford. The murder occurred on Monday night, December 10, 1888. Lunsford swears that on Wednesday night preceding the night on which the murder was committed the appellant in a conversation with him, said to him "that he and George Shulze (his brother) were going to kill old man King and his family on the following Monday night and burn down the house." That "on the Wednesday night after the fire the defendan

asked me if I had heard of the fire.   I told him I had heard of it.   He
then said, 'I reckon old man King will not prosecute me now.   George
and I did them up.'   Sometime after this the defendant said me, 'Albert,
you are the only person who knows about that thing, and, God damn
you, if you tell it I will kill you.'   I said to him, 'How did you get at
that thing, anyhow?'   He replied, 'I chopped the old man's head open
with the edge of the axe; knocked the old woman in the head with the
back of the axe, and George did the children up with the hatchet, and
we then set fire to the house.'"   This was in March, 1889.

Lunsford, it is true, is corroborated by the testimony of Thos. Walker,
John Davis, Andy Taylor, Isaac Johnson, and Steve Walker.   But the
State relied upon the fact that a certain "tow sack," patched with a piece
of striped cloth, and a quilt, or piece of quilt, were found on the road
leading from the King place to the house of John Shulze, where defend-
ant lived, as evidence tending to show the defendant's guilt.

Mrs. J. E. Johnson says that she lived with her husband about three-
fourths of a mile from King's; that on the morning after the fire, her
husband went to the scene of the fire, and she soon followed; that there
were only two or three persons there when she got there; that she did not
stay long, and that as she returned home she found lying on the edge of
the road a piece of bed quilt and an ordinary tow sack, with a domestic
string to it, and a large patch on it; that she picked them up and carried
them home; that they were lying on the edge of the King road, and that
this was the road usually traveled in going from the place where the de-
fendant lived to the place where the deceased lived.   The witness was
shown the sack and quilt, and she identified them as the ones found by
her.

Andy Taylor, a witness for the State, being on the stand, and the sack
and piece of quilt being shown to him, said:   "I think I know both the
sack and the quilt.   About —— weeks before Mr. King's house and fam-
ily were burned, I picked cotton for one week for old man John Shulze,
and Albert Lunsford picked cotton there the same week.   We picked
cotton together, and this is Lunsford's sack.   Albert Lunsford picked
cotton in this sack, or one just like it.   The sack he picked in was a tow
sack, and had a large patch on the bottom out of striped cloth like
that one, and had a string on it just like this has.   While I was at Mr.
John Shulze's they wanted me to ride a wild mule, and tore a piece of
quilt off of an old quilt like this to put under the saddle.   This looks
like the same piece that I used in riding John Shulze's wild mule."

On cross-examination this witness says:   "I picked cotton at John
Shulze's with Albert Lunsford, and know that he picked cotton in that
sack that week, or at least one just like it.   That is Albert Lunsford's
sack."

Lunsford swears that he never saw the sack before, nor did he remem-

ber ever seeing the piece of quilt. He admits picking cotton with Andy Taylor one week at John Shulze's. He states that in September (before the burn), he bought six yards of cloth just like the patch on the sack from Southerland, in Cookville, to make some shirts, and got Mrs. Shulze (mother of the defendant) to make them. She made him two shirts. The patch on the sack, he says, is of the same kind of cloth that the shirts were made of.

Southerland being shown the sack says, "I think I sold the cloth (alluding to the patch) to Albert Lunsford. I sold him six yards of it."

Mrs. Shulze (mother of the defendant) says, "I have never seen this sack before. It does not belong on our premises. It is not mine, and I never saw it before. I picked cotton with the boys last fall, and know that this sack was not used for a cotton sack on our premises. I never put that patch on this sack. I did make Albert Lunsford two shirts last fall out of striped cloth, but it was not that kind of cloth. He brought me six yards of cloth to make him two shirts, and I made them for him. It took all of the six yards to make the two shirts. I don't think there was a piece left as large as my hand. I think I have some of the scraps at home. I know this piece of quilt was never used on our premises for any purpose. I never had a quilt or piece of quilt like it, and am certain there was none on my place like it. I never saw it before. This may be Albert Lunsford's sack, but it is not my sack, and does not belong to my premises."

We have set out in full all the testimony bearing upon the sack, patch, and quilt, for the purpose of presenting the question we desire to discuss, which is the failure of the court to submit to the jury the instructions relating to the corroboration of an accomplice. Is there evidence in this record tending to show that Lunsford was an accomplice? If so, the court should have informed the jury of the necessity of corroborating his testimony. Counsel at the time objected to the charge of the court because of this omission, reserving a bill.

The learned judge refused to submit such instructions because he says "the testimony did not show Lunsford to be an accomplice." Now, as above said, the State relied upon the fact that the sack with the peculiar patch, and the piece of quilt, were found early next morning on the road leading from King's to the house of defendant, as evidence of defendant's guilt, proving by Taylor that the piece of quilt belonged at Shulze's, and by Lunsford that the patch on the sack was of certain cloth out of which Mrs. Shulze had made his, Lunsford's, shirts—thus attempting to show that the sack came from Shulze's as well as the quilt, and that hence the defendant was the person who dropped these articles in going to or from the place of the murder on the night the murder was committed. But Taylor swears very positively that the sack belonged to Lunsford; that he saw it the fall before the murder in the possession of Lunsford; and

not only so, but the "sack had a large patch on the bottom out of striped cloth, just like that one, and had a string on it just like this has." Mrs. Shulze swears she never saw the sack before; that it did not belong on her place. Lunsford swears he never saw the sack before; that it was not his, and had never belonged to him; that he used a white cotton sack at Shulze's when he picked cotton there, and that the patch on the sack in evidence was just like the cloth of which Mrs. Shulze made the shirts for him.

Now, if the sack belonged at the Shulze place, being found under the surrounding circumstances presented in this record, it would be a circumstance against the defendant; and if it belonged to Lunsford, the circumstances are such as to make it as cogent a fact against him, as under the other hypothesis it would be against the defendant. It being evident that the person who dropped the sack dropped the quilt also, and as there is no evidence that Lunsford was connected with the quilt—Taylor swearing it belonged at Shulze's—the State contends that this eliminates the sack from the case, the contest being over the quilt. If it were certain the quilt came from Shulze's this would be a strong position. But is it certain? Taylor saw the quilt once, on the occasion when he rode the mule, while at Shulze's picking cotton. This was in September, as we gather from the record. He saw it next at the trial in April, seven months after. It would be remarkable indeed for him to identify a piece of quilt under such circumstances. But in fact he is not at all certain that the quilt is the same used by him on the mule. He says "this looks like the same piece that I used in riding John Shulze's wild mule." Was there anything peculiar about this piece of quilt to rivet the attention of Taylor? Was it home made? What was its color? We are left in the dark upon these matters of description. That it looked just like the piece may be true, and still it may not be the same. Numbers of persons living in that vicinity may have had quilts just like it. Stores are filled with quilts of the same pattern. Our women have to a great extent ceased to make them. It is unprofitable in this day and time to make them.

Taylor is nothing like as clear and positive that the quilt was the same used by him as he is that the sack belonged to Lunsford. Mrs. Shulze swears positively that the piece of quilt did not belong to her place, and though she be the mother of defendant, she may tell the truth. She is certainly entitled to as much credit as Lunsford, upon whose testimony this prosecution mainly depends, and who stands in this record a confessed liar.

It being conceded that the sack and quilt were dropped by the same person, and that the evidence is stronger in support of the hypothesis that the sack belonged to Lunsford than that the quilt belonged at Shulze's, the inference that Lunsford dropped them is stronger than it is that they were dropped by the defendant.

To re-state: The sack and quilt are so closely connected that the inference is clear that they were left on the road by the same person. Taylor is certain that the sack belonged to Lunsford. He believes that the quilt belonged at Shulze's. The person who left these articles on the road was probably guilty of the murder. The more certain the fact, the more certain the conclusion. Lunsford owned the sack—of this Taylor is certain. Lunsford may have had a piece of quilt like that used by Taylor on the mule. This is not unreasonable, as we have shown above. It is more reasonable than that Shulze had the sack, because Taylor is certain that Lunsford owned the sack, giving very plausible reasons for knowing this fact, viz., the large patch on the bottom and the string. He is not, and in the very nature of things could not be certain, under the circumstances, that the quilt belonged at Shulze's. Hence, the inference is stronger that Lunsford left these articles on the road than that defendent left them. By a circumstance Lunsford is criminated; therefore, the necessity of proper instructions to the jury relating to the corroboration of this witness. The jury should have been permitted to pass upon the fact as to whether Lunsford was an accomplice, and if so, then they should have been informed of the necessity and the nature of the corroboration required by the statute. The necessity of such a charge is intensified for two reasons: 1. The circumstances surrounding Lunsford when he first divulged the confessions of defendant. There was a committee formed consisting of about 200 persons. Lunsford was suspected. The country was very greatly excited. He knew that suspicion rested upon him. 2. He lied most egregiously about his knowledge of this murder, and repeated his falsehoods. He lied as to his reason for lying, saying that the reason why he had denied knowing anything of the murder was that he was afraid of defendant. Afraid of defendant with a posse of 200 men at his back! This is monstrous. No sane man could believe such stuff. His version of defendant's confession comes in such a questionable shape as to stagger credulity. The times and places, and the matter itself are unnatural and unreasonable, but may be true. In view of all these things we say that the necessity for a charge on the testimony of an accomplice was intensified, and should have been given.

We are not to be understood as holding that if, under proper rulings and instructions, the jury should convict, we would set aside the verdict because of the insufficiency of the evidence. The jury being the judges of the credibility of the witnesses, it is their province to pass upon the weight of the evidence, and not this court. Lunsford and others swear to facts which, if true, are amply sufficient to warrant a conviction of murder of the first degree. In fact, there is no murder of the second degree in this case, and the court did right in not charging upon that degree.

When the State brought forward and put in evidence the facts relating

to the sack and piece of quilt the appellant moved to withdraw the case from the jury and for a continuance, claiming surprise. In his motion he set forth that he could prove by John Shulze that neither the sack nor piece of quilt belonged on his premises. There had been an examination of this case before a justice, and no witness mentioned the sack or piece of quilt. John Shulze was at home sick in bed. He had been subpœnaed, and in fact there is no question but that the appellant had used proper diligence to secure his attendance. Appellant and his counsel swear that neither of them ever heard of the sack or quilt until developed on the trial. We are of opinion that the motion should have been granted.

Because of the error in the charge noticed, and because the court erred in not granting the motion to withdraw the case from the jury and continue, the judgment must be reversed and the case remanded for another trial.

Other supposed errors will not arise upon another trial.

*Reversed and remanded.*

Judges all present and concurring.